JOHN F. SMITH *v.* CITY OF RUTLAND.

February Term, 1925.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1925.

*Pleading—Demurrer Waived by Proceeding with Trial on Merits—Paupers—G. L. 4222—"Offense"—Requisites for Jailer, Relieving Poor Prisoners, to Secure Reimbursement.*

1.  Demurrer to complaint is waived when defendant elects to go to trial on merits, and exception to overruling of defendant's demurrer is thereafter unavailing.

2.  Jailer, supplying support for transient pauper confined in jail, as required by G. L. 4222, can only recover therefor as provided by statute, both obligation for relief and support of paupers, and right of recovery by jailer therefor, being respectively wholly imposed and given by statute.

3.  "Offense" as used in G. L. 4222, imposing ultimate liability for support of poor prisoners on town where offense was committed, expense of relief and support of persons confined in jail on criminal charges being otherwise provided for, includes those confined on civil process, and means the act which gives rise to cause of action on account of which offender is confined to jail.

4.  Under G. L. 4222, jailer who has supplied relief for poor prisoners, one of whom was confined on execution based upon cutting of

timber unlawfully, and another on bastardy proceedings pursuant to G. L. 3618, may only recover therefor after notification of overseers of poor of respective towns in which offenses were committed, and by proceeding against such towns, if overseers fail to supply support after notification.

ACTION OF CONTRACT under G. L. 4222. Trial by Rutland city court, *Leonard F. Wing,* City Judge. Defendant's demurrer to complaint overruled. Judgment for plaintiff. The defendant excepted. The opinion states the case. *Reversed and remanded.*

*Clayton H. Kinney,* city attorney, for the defendant.

*James P. Leamy* for the plaintiff.

TAYLOR, J.    [1]    The plaintiff is the keeper of the Rutland county jail. The action is contract based on G. L. 4222 to recover for the board and lodging of two prisoners while confined in such jail. The trial was by court with judgment for the plaintiff. The defendant argues exceptions (1) to the overruling of its demurrer to the complaint; (2) to the overruling of its motion for judgment at the close of the evidence; (3) to the exclusion of certain evidence; and (4) to the judgment rendered. The questions raised by these exceptions involve the construction to be given the statute and its application to the facts of this case. The exception to the overruling of defendant's demurrer is not available, for the demurrer was waived when the defendant elected to go to trial on the merits. *White's Admx.* v. *Central Vermont Ry. Co.,* 87 Vt. 330, 337, 89 Atl. 618; *Niles* v. *Central Vermont Ry. Co.,* 87 Vt. 356, 360, 89 Atl. 629; *Citizens Savings Bank & Trust Co.* v. *Northfield Trust Co.,* 89 Vt. 65, 94 Atl. 302, Ann. Cas. 1918A, 891. However, the controlling question was saved by the other exceptions.

So far as material here G. L. 4222 provides: "If a transient person * * * is committed to jail, and is in need of relief, or has been committed to jail for any offense and at the time of his discharge therefrom is in need of relief, the jailer * * * shall be at the expense of relieving and supporting such person until he represents his situation * * * to the overseer of the poor of the town in which the offense was committed, after which the over-

seer of the town so notified shall provide for his support; and, if the overseer neglects to provide for such support, the person so supporting him may recover therefor in an action of contract, on this statute, against the town so notified; and if such transient person is not of sufficient ability to defray the expense of his support, with the other contingent charges, the town defraying such expense may recover the same in an action of contract, on this statute, from the town in which such person last resided three years supporting himself and family.''

The following facts appeared by the uncontradicted evidence: One Julius L. Grover was committed to the Rutland county jail by Sheriff Adams on a certified execution in favor of G. Frank Hendee of Pittsford, wherein Grover is described as of Hubbardton in Rutland county. The action on which the execution was based involved the cutting of timber belonging to Hendee. It appears by the officer's return on the execution that Grover's place of abode at the time of the arrest was in the city of Rutland, at which place the arrest was made. Benjamin Trudo was committed to the Rutland county jail by Sheriff Adams on a warrant issued by the clerk of Rutland county court pursuant to G. L. 3618, in a bastardy proceeding pending in said court. The warrant recites the prosecution of Trudo, described therein as of Brandon in Rutland county, by one Cecille M. Herriman of said Brandon on a complaint of bastardy; the determination by said court that Trudo was the father of the child described in the complaint; the orders made by the court for the support of the child and the assistance of the complainant; and the failure of Trudo to comply with such orders during the term of court at which they were made. In both cases the plaintiff represented the situation of the prisoners to the overseer of the poor of the city of Rutland, who, it appears, took no action in the premises.

No other facts appeared in evidence respecting the nature of the actions in which these commitments were made or the places where the acts were committed which constituted the causes of action. The defendant claimed that the act out of which the several actions grew was the ''offense'' contemplated by the statute and offered to show by the files and records of court and the testimony of witnesses that the cause of action in the Trudo case accrued in the town of Bridport, Vermont, and that the cutting of timber in the Grover case was on the land

of Hendee in the towns of Pittsford and Hubbardton, Vermont, as showing that the "offenses" for which the paupers were confined in jail were committed outside the city of Rutland. The evidence was excluded, to which the defendant seasonably excepted. No question is made but that these prisoners were transient persons within the meaning of the statute and that they were in need of relief. The issue is whether in the circumstances the statute makes the city of Rutland liable in this action. This presents the question (a) as to what is an offense within the meaning of the section; (b) what town is liable thereunder for the board and lodging of transient persons confined in jail on civil process. A study of the statute and the history of its development will dispel much of the doubt and difficulty suggested in argument.

G. L. 4222 is contained in the chapter of the statutes relating to the support of paupers. Its primary purpose is to provide for the relief and support of transient persons who are in need of relief. There are two classes of such persons within the purview of the section. The first, and the one contemplated from the beginning of the pauper law, includes transient persons in need of relief who are suddenly taken sick or lame, or are otherwise disabled and confined to any house in a town. In such case the person at whose house the transient is, is made chargeable with the expense of relieving and supporting him, until he represents his situation to the overseer of the town. In such case the notice is given to the overseer of the town where the transient person is confined. The other class includes transient persons who are committed to jail and are in need of relief. The provisions relating to such persons first appear in the revision of 1839 as an amendment of the earlier statute relating to the relief of transient persons generally. This amendment left the jailer to sustain the expense of relieving and supporting such a prisoner until he should represent his situation to the overseer of the poor of the town. As the law then stood, the notice was to be given to the overseer of the poor of the town where the jail was located, after which such overseer was required to provide for the prisoner's support at the expense of the town. The town furnishing the support was given an action to recover the money so expended from the town in which the transient person was legally settled, if he was not of sufficient ability to defray the expense of his support. R. S. Ch. 16, § 12.

The section remained substantially the same until the change in the pauper law in 1886, when it was amended to conform to the new plan which substituted residence in a town in place of legal settlement as a basis of ultimate liability for a pauper's support. The provision for obtaining the relief in the first instance remained as before, and the town where the jail was located was given an action to reimburse itself against the town of the prisoner's residence.

In this connection we should notice other provisions of the statutes which relate to compensation for the board and care of prisoners confined in jail, and which shed light on the proper construction of the provision in question. At an early date every person committed to jail for an offense or misdemeanor was required to pay for his support while in jail, if he had the ability to do so. Acts of February Session, 1797, p. 19, § 6. This provision disappeared in the revision of 1839. In 1821 an act was passed providing for the relief and support of poor persons confined in jail who had no legal settlement in the State. It required that overseers of the poor should relieve and support all poor persons confined in jail in their towns, having no legal settlement within the State, and that the expense thereof should be paid out of the State treasury. No. 16, Acts of 1821. At the same session it was enacted that the expense of relieving and supporting a person confined in jail by virtue of any criminal prosecution should be paid out of the treasury into which the fine would be paid, if collected. In the revision of 1839 the former act was specifically made to apply to prisoners confined in jail on civil process, who were classified as State paupers. Persons confined in jail on criminal process were classified in this revision as State prisoners, and the expense of their board and care was assumed by the State. R. S. Ch. 16, § 31; Ch. 103, § 54; Ch. 107, § 6 (page 479). These provisions, with some changes presently to be noticed, still remain in force. G. L. 4225, 7275, 7457 as amended by No. 137, Acts of 1925.

With the change of the pauper law in 1886, the statute relating to State paupers was amended to read: "Overseers of the poor shall relieve and support poor persons having no residence in the State, confined in jail on civil process in their towns; and the expense shall be paid out of the State treasury," etc. The amendment substituted "residence" for "legal settlement"; and by residence was meant residence as defined in the

pauper law. See *Town of New Haven* v. *Town of Middlebury,* 63 Vt. 399, 21 Atl. 608. Thus it is seen that until later amended the statutes placed the duty of supporting transient persons confined in jail in the first instance on the overseer of the poor of the town where the jail was located. The ultimate liability for the expense of such support fell upon the town of the prisoner's residence, if such there was in the State; otherwise, it was borne by the State. In 1898 a change was made in the transient pauper statute for the evident purpose of relieving towns where jails are located from the former initial responsibility for the relief and support of such prisoners. As then amended, the statute required the jailer to represent the situation of the prisoner to the overseer of the poor of the town from which he had been committed to jail. Thereupon, it was made the duty of such overseer to provide for the prisoner's support, and the town defraying the expense was, as before, given an action to recover the same from the town in which the prisoner had a pauper residence. By the same act the State pauper statute was amended to read: "Overseers of the poor shall relieve and support poor persons for whose support no town in the state is liable, committed to jail on civil process while residing in their towns; and the expense shall be paid out of the state treasury," etc. No. 62, Acts of 1898, §§ 1, 2. The amendment of both statutes preserved the *status quo* respecting the ultimate liability for the relief and support of transient prisoners. These amendments became P. S. 3670 and 3672 in the revision of 1906.

In 1915 these statutes were again amended to their present form. No. 122, Acts of 1915, §§ 1, 2. The amendment of the transient pauper statute extended its provisions to a transient person who had been "committed to jail for any offense," and at the time of his discharge therefrom was in need of relief, and transferred the initial responsibility for the relief and support of transient prisoners, from the overseer of the poor of the town from which the prisoner was committed to jail to the overseer of the town *in which the offense was committed.* It is this latter provision and particularly the use of the word "offense," that occasions the present disagreement. By the same amendatory act the State pauper statute was amended by striking out the words "on civil process." In other respects it remained as before, and is now G. L. 4225. We note in passing that G. L.

4222 and 4225 are complementary statutes, and need to be considered together.

[2]    It is clear that in case of a transient pauper confined in jail on civil process the jailer cannot avail himself of the protection afforded by the statute in question by representing the prisoner's condition to the overseer of the poor of the town where the jail is located.    The obligation for the relief and support of paupers is wholly imposed by statute.    *Town of New Haven* v. *Town of Middlebury,* 63 Vt. 399, 404, 21 Atl. 608. The right of the jailer furnishing support to recover therefor from any town is also wholly given and regulated by statute. The argument that the statute so construed puts an unreasonable and unnecessary burden on the jailer could very properly be addressed to the Legislature, but it cannot influence the result here.    The legislative intent is too evident to admit of any other interpretation.

·[3, 4]    Neither can we adopt the view of the court below that the provision for notifying the overseer of the poor of the town in which the offense was committed was not applicable, as it related to some criminal act.    It is an impossible view that the word "offense" as used in this statute has such a meaning. The relief and support of persons confined in jail on a criminal charge are otherwise provided for.    Manifestly, the statute contemplates, as formerly, only the expense of the relief and support of prisoners other than State prisoners, which would include those confined on civil process.    It is a somewhat uncommon but still not an inaccurate use of the word "offense" to apply it to wrongful acts that give rise to tort actions.    It is synonomous with "misdeed," "trespass," "delinquency."    It has no technical legal meaning.    Webster's New Inter. Dic.    It is sometimes applied to those illegal acts which are done wickedly and with intent to injure.    *Edwards* v. *Turner,* 6 Rob. (La.) 382. It is sometimes used loosely in the sense of the transaction which constitutes the subject or cause of the suit.    The Idaho (D. C.), 29 Fed. 187, 189, 192.    It may mean a civil injury (*Jeringan* v. *Com.,* 104 Va. 850, 52 S. E. 361) or an omission of duty (*Ott* v. *Jordan,* 116 Pa. 218, 9 Atl. 321; *Angell* v. *Van Schaick,* 56 Hun, 247, 9 N. Y. S. 568).    In the section in question it means the act that gives rise to the cause of action on account of which the offender is confined in jail.    In the Grover case it would be the trespass, which the defendant undertook to show was committed

elsewhere than in the city of Rutland. In the Trudo case it would be the wrong charged in the complaint, which, as we understand the offer, was alleged to have been committed in the town of Bridport. The fact that Trudo was committed to jail for failure to comply with the court's orders in the bastardy proceedings would not make such failure the ''offense'' for which he was committed. Confinement in jail on the warrant issued in bastardy proceedings upon failure to comply with the judgment, like the imprisonment on a close jail execution in the Grover case, relates back to the cause of action and is merely a step in the enforcement of the remedy.

When a comprehensive view is taken of the statutes relating to the relief and support of poor persons confined in jail, it will be seen that the jailer's predicament is not nearly so serious as the plaintiff imagines. If the imprisonment is on civil process, he is put to the trouble of ascertaining where the offense was committed on account of which his prisoner is confined in jail. Ordinarily the complaint will afford him the necessary information. He is required to represent the prisoner's situation to the overseer of the poor of such town, if within the State. Thereupon, the overseer so notified is made responsible for the future relief and support of the prisoner, and must take the necessary steps to reimburse his town for the expense thereof. If the offense was not committed in the State, there would seem to be no doubt that the expense of the prisoner's maintenance would fall on the State without the intervention of the overseer of the poor of any town. See G. L. 587.

It sufficiently appears that it was essential to the plaintiff's right of recovery under the statute in question that he should show in each instance where the cause of action arose, and that it was material to the defense to show that it did not arise in the city of Rutland. It follows that defendant's exceptions must be sustained.

*Judgment reversed and cause remanded.*