# Leo Larochelle and Jacqueline Larochelle v. Joseph Komery

[261 A.2d 29]

No. 18-68

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed December 2, 1969

Reargument Denied January 15, 1970

*John A. Swainbank,* and *Robert A. Gensburg,* St. Johnsbury, for Plaintiffs.

*Arthur L. Graves,* St. Johnsbury, for Defendant.

**Shangraw, J.** This is an action of tort for fraud and deceit arising out of the sale, by the plaintiffs to the defendant, of two hundred (200) shares of stock of Hotel Osborne, Inc., Island Pond, Vermont. This represented all of the outstanding capital stock of the corporation.

Trial was by jury and resulted in a verdict and judgment in favor of the plaintiffs for Seven Thousand Dollars ($7000.00). On appeal the defendant claims error below in denying his motion to dismiss, to the denial of his motion for a directed verdict, and to the trial court's failure to charge on the issue of damages as requested.

On June 7 and June 8, 1965, writings were prepared and signed wherein the plaintiffs agreed to sell, and the defendant agreed to purchase all of the shares of stock of Hotel Osborne, Inc. The agreed sale price for the two hundred shares was $45,000.00.

The sale was consummated and the agreed sale price was paid in the following manner:

a. $2,560.00 cash.

b. $6,440.00 American money, ($7,000.00 Canadian money) represented by a Contract of Sale held by the defendant against Jean and Jeanne Brien and secured by a claim or hypothecation of store fixtures and a stock of merchandise in the store operated by Jeanne Brien in Sherbrooke, Province of Quebec, Canada, warranted free and clear of all encumbrances.

c. $17,500.00 by defendants assumption of a debt owed by the plaintiffs to Luc H. and Fabiola Roy.

d. $18,500.00 personal note of the defendant to the plaintiffs secured by a pledge of the Hotel Osborne, Inc. stock.

This litigation was prompted by reason of the alleged misrepresentations made by the defendant concerning the value

of the above claim or note of Jean and Jeanne Brien which was accepted by the plaintiffs as part payment for the stock.

The complaint generally alleges that the defendant, to induce the plaintiffs to accept the Brien note as a down payment, represented that the note was worth $7,000.00 in Canadian funds; that it was well secured by a mortgage, claim or hypothecation of the store fixtures and stock of merchandise operated by Jeanne Brien in Sherbrooke, Quebec; that Jeanne Brien was solvent and doing a good business in the store; all of which representations the plaintiffs relied upon.

On the contrary it is alleged that the Brien note or obligation was worth much less than the $7000.00 Canadian funds, $6,440.00 American funds, and was not secured by a mortgage, claim or hypothecation. It is further alleged that Jeanne Brien was not doing a good business, was not solvent, on the verge of bankruptcy, all of which the defendant then and there well knew or ought to have known. The complaint also alleges that the plaintiffs relied upon the representations so made by the defendant as an inducement to accept the Brien note as partial payment for the stock of Hotel Osborne, Inc.

It was developed during the trial that Jeanne Brien was adjudged a bankrupt on June 16, 1965 and the Brien note of $7,000.00 returned a bankruptcy dividend to the plaintiffs of only $196.43.

On July 19, 1965, the plaintiffs brought suit on the note. No judgment has been obtained thereon. From the evidence the jury could have reasonably found that further recovery on the note from either of the makers was unlikely.

The issue of fraud and deceit was considered in the case of *Batchelder* v. *Birchard Motors, Inc.*, 120 Vt. 429, 433, 144 A.2d 298. At page 433 of the opinion this Court stated:

> To support an action for fraud or deceit, the representations must be of existing facts relating to the subject matter of the contract, affecting its essence and substance, not matters of judgment or opinion, nor of facts that will exist, nor of promises. The representations must be made by the seller to induce the buyer to enter the contract; they must be false and at the time known by the seller to be false; or made by the seller as of his own knowledge without his in fact knowing them to be true; they must

not be open to the knowledge of or known by the buyer and must be relied upon by him in entering the contract to his damage.

The foregoing well-established principles in this State apply to this defendant in his dealings and representations made to the plaintiffs concerning the Jean and Jeanne Brien note or obligation assigned to the plaintiffs.

The evidence amply supports the allegations of fraud alleged in plaintiffs' complaint.

■ We first refer to the defendant's motion to dismiss the complaint. The defendant, in substance therein, urged that the complaint failed to set forth a cause of action. Following its denial by the trial court the defendant proceeded to trial, and by so doing waived the benefit of his motion, which in effect was in the nature of a demurrer. *Smith* v. *City of Rutland,* 99 Vt. 183, 184, 130 A. 714; *German* v. *Bennington & R. Ry. Co.,* 71 Vt. 70, 71, 42 A. 972. Further consideration of the motion is not required.

■ Another assignment of error by the defendant relates to the court's denial of a motion for a directed verdict made at the close of all the evidence. In considering a motion for a directed verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made. The tendency of the evidence and its weight is to be considered. *Pond* v. *Carter,* 126 Vt. 299, 302, 229 A.2d 248.

Defendant assigns therein four grounds in support of his motion. First, that plaintiffs' evidence has failed to show that the defendant is guilty of fraud and deceit. Secondly, defendant claims that the evidence failed to demonstrate that plaintiffs relied on any misrepresentations made by the defendant concerning the Brien note.

From what we have already said in this opinion, there appears no occasion to further refer, in detail, to the evidence as bearing upon the two above mentioned asserted grounds. It is sufficient to say, that the evidence presented jury questions on each of these two points, and that the jury could reasonably have found from the evidence in favor of the plaintiffs on these two issues.

Paragraphs three and four of defendant's motion for a directed verdict continues by stating that, taking the evidence in the light most favorable to the plaintiffs, they have failed to show any damage by reason of defendant's fraud; that plaintiffs have not suffered any net actual loss as a result of the transaction, and also failed to present evidence necessary for the proper and correct computation of their damage.

The remaining aspect of the appeal relates to the failure of the court to charge on the issue of damages as requested by the defendant. These requests read:

> In order to award damages for the plaintiff in this case you must find that the plaintiffs suffered a net loss in the transaction and you can award them only the amount of money they have actually lost as a result of the fraud practiced on them.
>
> You can only award damages to the plaintiffs if the plaintiffs satisfy you that they have suffered a net loss from the transaction, and they must have presented to you the facts to enable you to make a proper and correct computation of their actual loss.

In commenting upon the measure of damage, the trial court in its instructions stated:

> In this connection, we would instruct you that if the plaintiffs are entitled to recover an amount which you, Ladies and Gentlemen of the jury, find to be the difference in the value of the Jeanne obligations, $7,000.00 in Canadian funds according to the contract, and valued by the parties at $6,440.00 in United States money, as between what it would have been worth, if as represented, and what it was actually worth, when turned over to the plaintiffs. . . . you must also have in mind that in your determination of the worth of this obligation, that the plaintiffs have received—I believe it is $197.00—upon such obligation, . . . and the difference between the two less the payment received would be the damages which these plaintiffs would be entitled to recover.

Following the charge, the defendant reiterated his claim on the issue of damages as stated in his requests to charge and was allowed an exception to the failure of the court to charge

as requested on this issue. Defendant was also allowed an exception to the trial court's instruction on the measure of damage to be followed by the jury.

Paragraphs three and four of the motion for a directed verdict, the requests to charge and the charge as given by the court on the measure of damage, are all related to the same subject,—that is, damages. We shall now consider these assignments of error collectively.

To summarize, following through on the financial result of the hotel transaction, and subsequent events, the record reveals that as part payment for the hotel corporation stock plaintiffs received $2,560.00 cash, out of which they paid their real estate broker who negotiated the sale to defendant, the sum of $2,000.00, leaving them $560.00. Plaintiffs also received a dividend of $196.13 from the Canadian bankruptcy court on the Brien obligation.

Defendant made three payments, aggregating $750.00, on the Roy note of $17,500.00, which he had assumed. These payments inured to plaintiffs' benefit.

No payment of interest was made by the defendant on his note of $18,500.00 payable to the plaintiffs, and having defaulted, the 200 shares of the corporation stock, pledged by the defendant to the plaintiffs as security for the payment of his note, were sold at public auction on March 29, 1966, for $11,000.00. The buyer made the purchase while acting on behalf of the plaintiffs.

The hotel property was again later sold for $45,000.00. Plaintiffs took back a mortgage of $33,000.00 as part of the purchase price. Plaintiff, Jacqueline Larochelle, testified that the mortgage was worth $10,000.00 less than its face value. She also testified that this mortgage was subsequently exchanged for other property, resulting in a loss on the $33,000.00 mortgage of $10,000.00.

In an action for fraud and deceit the measure of plaintiff's damages is not compensation for breach of the contract, but compensation for the injury he has sustained through being inveigled into the contract. 37 C.J.S., Fraud, § 143(e).

The burden was on the plaintiffs to show, not only that they had been damaged by the fraud of the defendant, but also to show facts necessary for the proper and correct

computation of damages. *Viens* v. *Lanctot,* 120 Vt. 443, 451, 452, 144 A.2d 711; *Rice's Admr.* v. *Press,* 117 Vt. 442, 449, 94 A.2d 397.

We have recognized that the measure of damages to a plaintiff in an action of fraud and deceit is the net amount of the money he has actually lost as a result of the fraud practiced on him. *Crowley* v. *Goodrich,* 114 Vt. 304, 309, 44 A.2d 128.

As a general rule, one injured by the commission of fraud is entitled to recover such damages in a tort action as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded. 37 Am.Jur.2d, Fraud and Deceit, § 342.

It is a further general principle that an injured party is entitled to recover in a tort action such damages as result directly, naturally, and proximately from fraud, including those which were actually or presumptively within the contemplation of the parties when the fraud was committed. The recovery is restricted in all cases to such damages as were the natural and proximate consequences, or the direct consequences, of the fraud, and to such damages as can be clearly defined and ascertained. 37 Am.Jur.2d, Fraud and Deceit, § 343.

In challenging the court's charge on the issue of damage, defendant urges that the plaintiffs suffered no net loss in the stock sale transaction. In support of this contention he calls attention to the cash down payment of $2,560.00 and the $750.00 paid by him on the Roy note. He argues, that with the foregoing and the bankruptcy dividend considered, and the price received by the plaintiffs for the hotel property at a subsequent sale thereof, that plaintiffs have sustained no net loss, notwithstanding fraud on his part concerning the Brien note.

Whether the plaintiffs made a good or bad bargain in the second sale of the hotel property is immaterial on the issue of damages in this case. There is no causal connection between these two separate, independent and unrelated transactions. Even assuming that the plaintiffs did ultimately sell the prop-

erty at a price equal to, or in excess of that agreed to be paid by the defendant, the defendant should not be permitted to escape liability and damages for his wrong by reason of the good fortune of the plaintiffs.

It is abundantly clear from all the evidence that plaintiffs elected to rely on their contract and sue in tort. The defendant claims that the contract was rescinded by the plaintiffs. There is no evidence to support this claim. Here, they stood on the contract and brought action for damages as they claimed to have suffered by reason of defendant's fraud. *Collier* v. *Nolan and Brown*, 125 Vt. 82, 85, 211 A.2d 265; *Land Finance Co.* v. *Sherwin Electric Co.*, 102 Vt. 73, 81–82, 146 A. 72.

Plaintiffs were entitled to recover the difference between what they bargained for, and what they received. They had the right to receive the equivalent of $45,000.00. Even on the defendant's theory of damage the plaintiffs have received only the equivalent of approximately $38,000.00. The evidence sustains the damages indicated by the verdict.

Defendant claims that the jury should have been permitted to consider the down payment of $2,560.00 and the payment of $750.00 on the Roy note by way of a reduction of plaintiffs' damages. This view is unsound. To accept the defendant's contention is to suggest in this case, that had these payments equalled the loss sustained by the plaintiff on the Brien obligation, the defendant would avoid liability for his wrongdoing. Such an approach is without merit.

There appears no error in the court's denial of defendant's requests to charge. For reasons stated in this opinion, defendant's motion for a directed verdict was also properly denied. Judgment should be affirmed.

*Judgment affirmed.*