### Peter S. Conover, et al. v. Wolford J. Baker, et al.

[365 A.2d 264]

No. 39-75

Present: Barney, C.J., Smith, Daley, Larrow, and Billings, JJ.

Opinion Filed October 5, 1976

*May & Davies*, Barton, for Plaintiffs.

*Swainbank, Gensburg, Morrissette & Neylon*, St. Johnsbury, for Defendants.

**Daley, J.** In November, 1972, the plaintiffs, Peter and Robin Conover, at the time residents of the State of New Jersey, entered into negotiations with the defendants, Wolford and Priscilla Baker, for the purchase of a small ski lodge located in the Town of Jay. The lodge, situated upon 9.6 acres of land, consisted of four guest bedrooms, a restaurant, and an unfinished area on the second floor. The plaintiffs negotiated with the defendants on several occasions, and a purchase and sale agreement was entered into between the parties in February, 1973. The real property was conveyed to them by deed in July, 1973, for a consideration of $62,000.00.

The plaintiffs subsequently brought a civil action in fraud and deceit claiming that the defendants had, at various times during the course of the negotiations, made several false representations concerning the lodge and its facilities. These representations related to the nature and quality of the water supply; the size and capacity of the septic system; and the ability of certain floor joists to withstand expansion in the unfinished portion of the lodge. They further alleged that the defendants, as part of a scheme to defraud the plaintiffs, promised to reconstruct a certain chimney and to leave a television antenna on the premises.

Trial by jury resulted in a verdict in favor of the plaintiffs to recover $9,845.00. From the judgment on the verdict, made after the denial of their motion for a new trial, the defendants appeal. The claims of error may be summarized as follows: any representation by the defendants as to the water supply and the weight bearing capacity of the floor joists were but expressions of opinion, not representations of existing fact, and thus were not actionable in fraud. Their failure to recon-

struct the metal chimney and leave the antenna on the premises were unfulfilled promises and thus the court erred in submitting these matters to the jury. The defendants also claim that the court erred in its instructions to the jury relating to the burden of proof and the measure of damages.

For a better understanding of the issues presented, a short factual presentation, viewed in the light most favorable to the plaintiffs, is in order. During the course of negotiations preceding their purchase of the property, the plaintiffs informed the defendants of their intention to operate the ski lodge as a commercial venture on an expanded basis. To this end, they made inquiries as to the source and quality of the drinking water. They were told that the lodge was supplied by pure spring water meeting state standards and that the defendants had not encountered any previous trouble with the system. The plaintiffs were further told that the septic system consisted of two 1000-gallon tanks with sufficient capacity to meet state standards for an expanded guest facility. Several discussions were held relative to the plaintiff's desire to provide more guest rooms; they were assured that they could do as they pleased with the unfinished second floor area. The plaintiffs did not particularly like the metal stovepipe from a stove on the first floor which projected through a side wall. One of the defendants assured them that he would relocate this pipe so that it would exit through the roof. The plaintiffs also asked if the television antenna would remain on the premises after the conveyance of the property; Mr. Baker indicated that it would.

Soon after the property was conveyed to them the plaintiffs discovered that the spring was contaminated. As they commenced their expansion plans, it was learned that the septic tanks were not as represented but consisted of two tanks with a total capacity of 750 gallons. A contractor employed by the plaintiffs to construct rooms in the unfinished area informed them that the 2 inch by 6 inch floor joists were of insufficient strength to support the planned expansion. The stovepipe chimney had not been relocated and the television antenna was gone.

■■ The defendants, relying upon the general rule that an unfulfilled promise does not constitute actionable fraud,

*Woods* v. *Scott,* 107 Vt. 249, 251, 178 A. 886 (1935), maintain that the lower court erred in allowing the jury to consider evidence relating to the promise to relocate the chimney and the promise not to remove the antenna from the premises. The Vermont courts have recognized an exception to the general rule. If the promise is shown by the evidence to be an integral part of a general scheme or plan to defraud, then the promise can be the basis of an action in fraud. *Fayette* v. *Ford Motor Credit Co.,* 129 Vt. 505, 510, 282 A.2d 840 (1971); *Comstock* v. *Shannon,* 116 Vt. 245, 250, 73 A.2d 111 (1950). In *Fayette* v. *Ford Motor Credit Co., supra,* the Court found that the unfulfilled promises were a material part of a general scheme or plan to induce the plaintiff to advance money. In *Comstock* v. *Shannon, supra,* the evidence demonstrated that the broken or unfulfilled promises were not only part of a scheme to defraud but were also material inducements relied upon by the plaintiffs in purchasing the premises. In our opinion, the evidence taken in the light most favorable to the plaintiffs in this case does not demonstrate that the unfulfilled promises were a material inducement within a general scheme to defraud the plaintiffs. It was therefore error for the trial court to allow the jury to consider the promises concerning the chimney and the antenna in determining liability and assessing damages.

■ The defendants before the trial court requested that the jury be instructed that the measure of damages was the sum of money the plaintiffs had to expend to make the property purchased conform to the representations made by the defendants. Instead the court charged the jury that the plaintiffs were entitled to recover the difference between the value of the property as it actually was at the time of the sale and the value of the property as represented by the defendants. We find in light of the evidence presented by the plaintiffs that the lower court's instruction to the jury regarding damages was erroneous and that the court should have charged substantially as requested by the defendants.

The record discloses that all misrepresented conditions of the property were remedied by the expenditure of less than four thousand dollars. The plaintiffs testified that, in their opinion, they were damaged in the range of $17,000 to $22,000 by the fraudulent misrepresentations of the defendants. The

plaintiffs' expert witness as to value testified that the plaintiffs' property was worth $12,000 less because of the fraud practiced against them by the defendants. Our review of the record shows that the testimony as to any damages in excess of the actual amount of money expended by the plaintiffs was totally speculative and without foundation and should not have been considered by the jury in the course of determining damages.

An example of the speculative testimony regarding damages to which the jury was exposed is supplied by the testimony of the plaintiffs' expert witness as to value. He testified that the value of the property was diminished by three thousand dollars because of the failure of the water supply to meet state standards. The plaintiffs were able to comply fully with those standards by installing a chlorinator at a cost of less than two hundred dollars. This witness further testified that another three thousand dollar diminution in value was attributable to the absence of the television antenna, the unrepaired chimney, and other unenumerated factors dealing with the plaintiffs' commercial venture. The plaintiffs' own testimony regarding the antenna and chimney demonstrated that they had to expend less than five hundred dollars to rectify these matters. No competent evidence was presented as to the reduction of customers which resulted from the delayed opening of the plaintiffs' lodge, nor was there evidence of any loss of profits sustained by them because of this delay. Any evidence as to the commercial damages sustained by the plaintiffs because of the delayed opening of the lodge for business was totally speculative and without foundation. This is especially evident in light of the plaintiffs' own testimony that they intended to expand the premises in order to accommodate more guests before they went into business.

■ ■ The ultimate purpose of any rule for measuring damages in a case involving fraud is to allow the plaintiff to recover such damages as are "the natural and proximate consequences of the fraud." *Fayette* v. *Ford Motor Credit Co.*, *supra*, 129 Vt. at 516. As the Court stated in *Larochelle* v. *Komery*, 128 Vt. 262, 268, 261 A.2d 29 (1969), a party seeking damages for fraud is entitled to

recover such damages in a tort action as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded.

The plaintiff in a fraud action bears the burden, however, of showing facts necessary for the "proper and correct computation of damages." *Id.* at 267–68; *Viens* v. *Lanctot,* 120 Vt. 443, 451–52, 144 A.2d 711 (1958). The damages resulting from the fraud must be "clearly defined and ascertained." *Fayette* v. *Ford Motor Credit Co., supra,* 129 Vt. at 516. Here the instruction which the lower court gave to the jury enabled it to consider supposed damages to the plaintiffs' commercial venture, a matter concerning which the plaintiffs had not presented evidence sufficient to meet their burden of proof. The only damages suffered by the plaintiffs which were clearly defined and ascertained were those damages sustained by them in correcting the misrepresented conditions of the property. An instruction to the jury which allowed it to award damages in excess of this amount, in light of the evidence presented by the plaintiffs, was error.

In so ruling, this Court is not abandoning the benefit of the bargain rule which has long served the Vermont courts. See *Larochelle* v. *Komery, supra,* 128 Vt. at 268, 269; *Donovan* v. *Towle,* 99 Vt. 464, 467, 134 A. 588 (1926); *McAllister* v. *Benjamin,* 96 Vt. 475, 490, 121 A. 263 (1923). We are merely reiterating the general rule that the plaintiff in a tort action can only recover those damages which he has established in meeting his burden of proof. The application of this rule must necessarily take into account the facts and circumstances surrounding the fraud, and the nature and extent of the injury suffered by the defrauded party. See *Bean* v. *Sears, Roebuck & Co.,* 129 Vt. 278, 282, 276 A.2d 613 (1971).

The errors by the lower court with respect to the instruction as to the measure of damages, along with the error concerning the unfulfilled promises, are sufficiently prejudicial to the rights of the defendants to compel us to reverse the judgment of the trial court and remand the cause for new trial. In light of this ruling, we do not deem it necessary to address the other issues raised on appeal.

*Reversed and remanded.*