## Marilyn M. Kramer v. Lee Chabot d/b/a L.A. Chabot & Son

[564 A.2d 292]

No. 87-508

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 30, 1989

*Biederman & Rakow, P.C.*, Rutland, for Plaintiff-Appellant.

*Rhys Evans*, Manchester Center, for Defendant-Appellee.

**Gibson, J.** Plaintiff sued defendant for breach of professional duty and misrepresentation in his inspection of a house on her behalf. The trial court found that a breach had occurred and awarded her $50 in damages. Plaintiff appeals from the trial court's determination of damages. We vacate that part of the judgment and remand for further proceedings.

In June of 1979, plaintiff decided to buy a house in Manchester, Vermont for $42,500. Prior to the purchase, she signed an agreement with the seller stating, inter alia, that the purchase was contingent upon plaintiff's obtaining a favorable inspection report on the property. Plaintiff hired defendant, a builder, to carry out this inspection.

Defendant gave plaintiff a one-page report which stated that the house (including the foundation, structural timbers, plumbing, electrical wiring, and roof) was in good condition. Plaintiff, relying on the report, then completed the purchase.

Despite the representations made in defendant's inspection report, plaintiff discovered, after the sale, numerous defects in the house which required substantial repairs. In the course of the next few years, she spent over $25,000 to put the house into shape, and then sued defendant to recover the sums she had expended, alleging that he had a duty to perform the inspection in a professional manner, and that his breach of that duty was the proximate cause of damage to plaintiff. In addition, plaintiff claimed that defendant either negligently or intentionally misrepresented certain facts about the property, and that she relied on his representations in deciding to purchase it.

Defendant did not appear personally for trial, although his attorney was present, and the trial court entered a default judgment against him on the issue of liability.* The court then proceeded to take evidence on the issue of damages. Plaintiff claimed damages totaling $25,214.10, the amount she had spent on repairs after buying the house.

Acknowledging that the "sole question" before it was the amount of damages to be awarded, the court concluded that compensating plaintiff for all her reasonable expenses in bringing the house into line with the inspection report would produce "an eminently unfair result," since evidence showed that the value of the property at the time of trial, some seven and one-half years after the purchase, was in excess of the $67,714.10 she had ultimately spent on it (purchase price plus repairs):

> If this [c]ourt were to grant her the reasonable cost of her repairs, it would be giving her a reward rather than an award.... Our purpose is not to put an injured plaintiff in a better position than he or she would have otherwise occupied. Such would be the result if the plaintiff received the damages she seeks ....

Instead—and noting it was only "small consolation"—the court awarded plaintiff a judgment for $50, representing the fee she had paid defendant for the inspection report in 1979.

Plaintiff appeals from the determination of damages, contending that the trial court erroneously looked to the present value of the property in ascertaining damages. We agree, and reverse for a redetermination of damages in light of this opinion.

■ In a tort action, compensation is provided so as to restore the person damaged, as nearly as possible, to the position he or she would have occupied had no wrong been committed. *My Sister's Place v. City of Burlington*, 139 Vt. 602, 612, 433 A.2d 275, 281 (1981). In such cases, the tortfeasor is

---

* In his brief and at oral argument, defendant contended that the default judgment entered against him on the issue of liability was erroneous. As he did not cross-appeal from the trial court's decision, however, that issue is not properly before us. The only issue on this appeal is the correctness of the damage award.

liable for damages which directly or proximately result from the wrong committed. *Id.* In actions involving misrepresentation, this Court has reiterated the compensatory nature of the damages to be awarded:

> [A] party seeking damages for fraud is entitled to "recover such damages ... as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded."

*Cushman v. Kirby,* 148 Vt. 571, 578, 536 A.2d 550, 554 (1987) (fraudulent misrepresentation case) (quoting *Larochelle v. Komery,* 128 Vt. 262, 268, 261 A.2d 29, 33 (1969)).

Generally speaking, there are two theories of damages in cases involving fraudulent or negligent misrepresentation in property sales cases. Some jurisdictions rely on the "out-of-pocket" rule, which permits recovery of the difference between the price paid for the property and the actual value of the property acquired, necessarily calculated as of the time of the transaction. See, e.g., *Dresser v. Sunderland Apartments Tenants Ass'n,* 465 A.2d 835, 840 and 840 n.18 (D.C. App. 1983); *Danca v. Taunton Savings Bank,* 385 Mass. 1, 9, 429 N.E.2d 1129, 1134 (1982) (out-of-pocket rule is proper measure of damages in action based on negligent misrepresentation); *B. F. Goodrich Co. v. Mesabi Tire Co.,* 430 N.W.2d 180, 182 (Minn. 1988); *First Interstate Bank of Gallup v. Foutz,* 107 N.M. 749, 753, 764 P.2d 1307, 1309 (1988). Other courts allow damages based on a "benefit-of-the-bargain" rule, which awards the difference between the price paid and the value of the property had the representations been true. See, e.g., *Miller v. Appleby,* 183 Conn. 51, 57–58, 438 A.2d 811, 814 (1981); *Munjal v. Baird & Warner, Inc.,* 138 Ill. App. 3d 172, 186, 485 N.E.2d 855, 867 (1985); *Danca v. Taunton Savings Bank,* 385 Mass. at 8, 429 N.E.2d at 1133 (benefit-of-the-bargain is proper measure of damages in action for deceit); *Davidson v. Rogers,* 431 So. 2d 483, 485 (Miss. 1983); *Little v. Gillette,* 218 Neb. 271, 279, 354 N.W.2d 147, 153 (1984).

Some jurisdictions apparently use both rules depending on the facts of the particular case before them. For example, in *Correa v. Maggiore,* 196 N.J. Super. 273, 284, 482 A.2d 192, 197–98 (1984), the New Jersey appellate court recognized both

rules, but subordinated them to the basic objective of making the injured party whole. In that case, which involved fraud in the deliberate concealment of material defects in the sale of property, the court ruled that the diminution of value caused by the deceit, rather than the cost of repairs, was the proper measure of damages where the latter approach would far exceed what was necessary to make the purchaser whole. See also *Harman v. Masoneilan International, Inc.*, 442 A.2d 487, 499 (Del. 1982) ("The damages available for deceit or fraudulent misrepresentation are generally limited to those which are the direct and proximate result of the false representation and which represent the 'loss-of-the-bargain' or actual 'out-of-pocket' loss.").

■ This Court, while using the phrase "benefit of the bargain," has similarly adopted a flexible, rather than a dogmatic, approach to calculating damages in fraud cases. In *Cushman v. Kirby*, noting that compensation was the goal, we stated: "The precise measure of damages that will provide the defrauded party with the benefit of his bargain, however, depends on 'the facts and circumstances surrounding the fraud, and the nature and extent of the injury suffered by the defrauded party.'" 148 Vt. at 578, 536 A.2d at 554 (quoting *Conover v. Baker*, 134 Vt. 466, 471, 365 A.2d 264, 268 (1976)). Relying on *Bean v. Sears, Roebuck & Co.*, 129 Vt. 278, 282, 276 A.2d 613, 616 (1971), we held that if the harm could be cured by restoration, the reasonable cost of repair might provide adequate and fair compensation, 148 Vt. at 578, 536 A.2d at 554; if, however, the damage were found to be permanent and beyond repair, then the "value of the property before and after the injury often affords the better guide to a just award. It all depends upon the character of the property and the nature and extent of the injury." *Id.* Within those general guidelines, this approach leaves to the trial court's discretion the determination of the best measure of damages to make the injured party whole again.

To deny plaintiff any recovery because the property as a whole appreciated in value over the seven-year period between purchase and trial would be clearly inequitable, since this is not a case where the repair price substantially exceeds the original contract price or current market value of the house,

see, e.g., *Correa v. Maggiore*, 196 N.J. Super. at 285–86, 482 A.2d at 198, and since this would deprive plaintiff of any means of compensation for the injury she sustained at the time the misrepresentation was made and relied on by her.

Instead, in calculating damages here, the trial court should have looked first to the nature and extent of the injury to plaintiff in determining what would make her whole again. Plaintiff bargained for a house in good condition, and did everything within her power to assure herself that that was what she obtained. Due to defendant's misrepresentation—negligent at the very least—she obtained a house in less than good condition, but which could be repaired so that it would be as represented in the inspection report. On remand, the trial court must determine what it will take to give plaintiff the benefit of her bargain, considering all of the surrounding facts and circumstances. *Cushman*, 148 Vt. at 578, 536 A.2d at 554; see also *Munjal v. Baird & Warner, Inc.*, 138 Ill. App. 3d at 186–87, 485 N.E.2d at 867 (benefit-of-the-bargain damages may be either the cost of repair to make property conform to the condition as represented, or difference between the value of property at time of sale with defects and the value it would have had if defects did not exist). This might be the cost of all repairs made by plaintiff; it might instead entail calculating her benefit-of-the-bargain loss by ascertaining the difference between the value of the premises as represented and the price actually paid by plaintiff, although we realize that this approach may be difficult of proof given the lapse of time since the misrepresentation and resultant injury in 1979.

We note that it is unclear from the trial court's findings whether all of the $25,214.10 expended by plaintiff arose out of repairing the items represented by defendant to be in good condition in his report, or whether some portions of those expenses were general improvements to the property over and above the necessary repairs. While any general appreciation of the property cannot relieve defendant of his monetary liability, he should not be held liable for expenses incurred by plaintiff which were not directly related to the state of affairs represented in his erroneous inspection report. Thus, on remand, if the trial court determines that the cost of repairs

is the appropriate measure of damages required to give plaintiff the benefit of her bargain, it should ascertain what repairs would have been necessary to put the house into the condition represented in defendant's report at the time of the purchase.

*The damages portion of the judgment is vacated, and the cause is remanded for further proceedings consistent with this opinion.*

