HERBERT BARRETT v. W. W. TYLER AND C. A. CHADWICK.

October Term, 1903.

Present: ROWELL, C. J., TYLER, START, WATSON, STAFFORD, and HASELTON, JJ.

Opinion filed December 2, 1903.

*Fraud—Recission of Contract—Election—Determination of.*

To rescind a contract of sale, voidable on account of the vendor's fraud, a manual tender of the property sold is not necessary, when the vendor expressly refuses to take it back.

When a contract of sale is voidable on account of the vendor's fraud, and he refuses to take back the property, the vendee may still elect whether he will stand upon the contract, or upon the recission.

But if, after such refusal, and without prior notice to the vendor of his intention to do so, the vendee sells part of said property and receives other property in part payment, this determines his election to stand upon the contract.

ASSUMPSIT by an indorsee of a promissory note against the makers. Plea, the general issue with notice. Said notice has not been furnished the reporter. Trial by jury at the June Term, 1903, Orange County, *Munson, J.*, presiding. Verdict ordered for the plaintiff for the amount of the note, and judgment thereon. The defendants excepted.

The case was disposed of on the defendants' evidence and offers, the offers being treated as proved for the purposes of the trial. It did not appear what the plaintiff actually gave for the note. The execution of the note and of the indorsement was conceded. Also conceded that the indorsement was after maturity. It appeared that before and at the time of the sale, said Holman represented to both defendants, in substance, that the horses were sound, good workers, and had no defects,

save what could be seen.   It appeared that these representa--
tions were relied upon by the defendants, and induced them
to make the contract.   The defendants' evidence tended to
show that these representations were false, and that Holman
knew they were false.   No claim was made that either of the
defendants knew of the defects in the horses before the trade.
The other facts appear from the opinion.

*N. L. Boyden* and *Darling & Darling* for the defendants.

The note having been procured by fraud, and transferred
to the plaintiff after maturity, is subject to all equities exist-
ing *at the time of transfer.*   *Britton* v. *Bishop,* 11 Vt. 70;
*Baxter* v. *Little,* 6 Met. 7; *Robinson* v. *Lyman,* 10 Conn. 30,.
25 Am. Dec. 52.

The defense of fraud is available against this plaintiff,.
and may be shown under the general issue.   *Foot* v. *Ketchum,.*
15 Vt. 258; *Limerick Nat. Bank* v. *Adams,* 70 Vt. 132.   De-
fendants' explanation of the sale of the horse after suit was.
that they sold it because it was dangerous.   The defendants
were entitled to have this evidence weighed.   *Stearns* v.
*Gosselin,* 58 Vt. 38; *Hulett* v. *Hulett,* 37 Vt. 581; *Lindsay* v..
*Lindsay,* 11 Vt. 621.

The defendants had elected to disaffirm the contract on.
account of fraud.   It is a legal presumption that this intention.
continued.   *Chilson* v. *Buttolph,* 12 Vt. 231; *Austin* v. *Bing-
ham,* 31 Vt. 577; *Farr* v. *Payne,* 40 Vt. 615; *Childs* v. *Merrill,.*
63 Vt. 463.

Upon the refusal of the vendor to take back the property,.
the vendee holds it as bailee of the vendor and must account
to *him* for it.   *Hambrick* v. *Williams,* 65 Miss. 18, 7 Am. St.
Rep. 631; *Smith's Admr.* v. *Smith,* 30 Vt. 139.   The plaintiff

can not take advantage of the sale of this horse. It does not concern him.

If the plaintiff were a *bona fide* holder of the note, he could not recover on the facts as they stand; for proof of fraudulent inception of the note throws on the plaintiff the burden of showing that he gave value therefor, which he has not done. *Collins* v. *Gilbert,* 94 U. S. 753; *Sistermans* v. *Field,* 9 Gray 331; *Vallett* v. *Parker,* 6 Wend. 613.

*M. M. Wilson* and *R. M. Harvey* for the plaintiff.

The sale of part of the property, as his own, was a waiver of all rights to rescind, and of previous offers to rescind. *Downer* v. *Smith,* 32 Vt. 1; *McCullough* v. *Scott,* 56 Am. Dec. 560; *Buffington* v. *Quantin,* 17 Pa. St. 310.

WATSON, J.  The note upon which the plaintiff seeks to recover was given by the defendants to one Holman for the purchase price of two horses and two harnesses bought of him by the defendants and was endorsed to the plaintiff after maturity. The defense was put solely upon the ground that the note was invalid at its inception by reason of fraud. The defendants' evidence and offers of evidence tended to show that before and at the time of the making of the contract, false representations were made by Holman to the defendants of and concerning the horses, which representations were relied upon by the defendants and induced the making of the contract.

It appeared that as soon as practicable after discovering that the horses were not as represented, and while Holman was the holder of the note, one of the defendants saw Holman and demanded that he take all the property back and give up the note; but Holman refused to do so on the ground that the horses were all right. Later and before a transfer of the

note, other like demands were made by the defendants upon Holman and refused by him. Defendants also offered to show that before this suit was brought on receipt of notice from plaintiff's attorney that he held the note, the defendants made an offer to said attorney to return the property for the note. On none of these occasions was the property itself brought and manually tendered by the defendants or either of them, although at the time of each demand and refusal, and at the time this suit was brought, all the property was in defendant Tyler's hands so that it could have been returned.

A short time after the suit was commenced and before trial, Tyler sold one of the horses for five dollars and a wagon worth five or six dollars. Defendants offered to show that the reason why Tyler sold the horse was because he considered it a dangerous and unsafe animal to keep in his barn or on his premises, and of no use. It did not appear whether or not the plaintiff was notified of the intended sale of the horse before it was made, nor what disposition was made of the money and wagon received therefor. Nothing had been paid on the note. The court directed a verdict for the plaintiff for the amount of the note, to which defendants excepted.

In order to rescind the contract, it devolved on the defendants within a reasonable time after discovering the fraud, to put Holman in *statu quo* by returning or offering to return to him the property purchased. But whether a manual tender of the property was necessary to effect a rescission we need not inquire for, if it was, the refusal by Holman to take the property back rendered such tender unnecessary. The rescission was complete without it.

The property being in the defendants' possession after the rescission because of the sellers' refusal to receive it back, the

defendants had the right then to elect whether they would stand upon the rescission, or acquiescing in the refusal by the other party, treat the property as their own under the purchase, and claim damages for the fraud.

But they could not do both. The contract was not void. It was only voidable. And if after the discovery of the fraud the defendants acquiesced in the contract either by express words or by any unequivocal act, it was an election on their part to stand upon the purchase and they could not later reject the property. We think the subsequent sale of one of the horses by the defendants for five dollars in money and for a wagon worth five or six dollars more was such an act as determined their election, and they could not thereafter go back to their rescission in avoidance of the sale. Benj. on Sales, Sec. 675; *Downer* v. *Smith*, 32 Vt. 1; *McCulloch* v. *Scott*, 13 B. Monroe, 172, 56 Am. Dec. 561.

It is said that after the rescission and the refusal of the seller to take back the property the defendants held the property as bailee and that they were not obliged to hold it awaiting the end of the controversy between the parties. The law to this effect seems to be well settled. But it is equally well settled as a part of the same law that if the purchaser would thus hold the property as bailee, he must no longer interfere with it more than may be necessary for its preservation or protection; and if he would relieve himself by sale of the property, it must be in good faith after notice of his intention to the owner. *Sands* v. *Taylor*, 5 Johns. 395; *Swann* v. *West*, 41 Miss. 104; *Hambrick* v. *Wilkins*, 65 Miss. 18, 7 Am. St. Rep. 631.

The defendants cannot stand upon the right to sell as bailee without showing a compliance with the law in this regard, which they have not done. Failing to offer or introduce

any evidence tending so to show, it must be taken that the sale was made by them not as bailee, but as of their own property; and so it particularly appears from the fact that a wagon was taken in part payment. The right to sell as such bailee on account of the owner does not include the right to exchange for other property. And when no notice is given to the owner by the bailee of his intention to sell, and by the contract of sale other property is taken in full or part payment, without any knowledge or consent of the owner of the property sold, the sale is such an unequivocal act on the part of the party selling, as in law shows him to be acting under his right as purchaser, and not as bailee after recission.

*Judgment affirmed.*