## Penn Securities Company v. Sacco

Before Valentine, P. J., Lewis and Pinola, JJ.

*Frank J. Gormley* and *John R. Sharpless*, for plaintiff.

*Louis Geo. Feldman* and *Anthony J. Ciotola*, for defendant.

PINOLA, J., June 3, 1949.—Plaintiff, assignee of the contract, has brought an action in replevin to recover a television set sold by the Electronic Device Corporation to defendant. No counterbond having been filed, the sheriff delivered possession of the set to plaintiff.

In his answer, defendant avers that the set installed was not the set ordered and that it failed to operate in accordance with the provisions of the contract, and therefore: (a) Demands the repayment of the amounts paid on the contract, (b) damages in the sum of $5,000 for loss of business resulting from the improper functioning of the set, and (c) $500 for damages to the roof of his property caused by faulty installation of the antenna.

Thereupon plaintiff filed preliminary objections: (1) That a counterclaim cannot be set up in replevin, (2) that defendant cannot controvert the sheriff's return, (3) that defendant attempts to assert a breach of warranty, (4) that defendant does not controvert plaintiff's right to possession of the set, and (5) that the counterclaim is vague and indefinite. It asks relief in the alternative, either judgment on the pleadings, or that defendant be required to file a new answer, or that he be required to set forth specifically facts which are omitted in connection with the counterclaim.

Defendant's counsel, at argument, admitted that the claim for damages, both to defendant's business and his property, are improperly contained in the answer, and he agrees that he cannot controvert the sheriff's return. Therefore, objections 1, 2 and 5 will have to be sustained. This leaves for consideration objections 3 and 4.

Plaintiff has attached to its complaint a copy of lease agreement covering a 15-inch Teleset, Rocket model, with tower and antenna assembly, which the Electronic Device Company agreed to sell defendant under an agreement attached by defendant to his answer, for

the sum of $3,200. Insurance charges of $36 and $108 for discount, make the total due $3,344.

The agreement provides that:

"The television installation must perform so that pictures are intelligible and comparable to now existing installations in similar surroundings and elevations."

The terms of payment are:

"⅓ in advance. Balance financed. Above described merchandise being the property of Electronic Device Company until the balance is paid in full."

Although the two contracts do not refer to each other, it is clear that the lease agreement covering the financing was made in pursuance of the contract of sale. The down payment of $1,400 is exactly what was required in that contract, and the "balance (was) financed" through the lease agreement.

All writings forming part of the same transaction are interpreted together: Landreth v. First National Bank of Philadelphia, 346 Pa. 551; and this is so although they do not refer to each other: Wilson v. Viking Corporation et al., 134 Pa. Superior Ct. 153.

From the pleadings and the argument, it is apparent that defendant, in addition to the down payment, paid the first of 12 equal monthly rental installments of $162 and thereafter refused to make any further payments because the set did not function properly.

Defendant had open to him two remedies: (1) To retain the set and sue for damages for breach of warranty, and to rescind the contract and recover the down payment and the initial installment.

Whether he actually rescinded and offered to return the set or whether he elected to sue for damages is not clear from the answer. We agree with counsel for plaintiff that defendant may not assert a claim for damages for breach of warranty or misrepresentation of quality as a set-off or counterclaim in an action of

replevin (Goss Printing Press Co. v. Redmond, 305 Pa. 518), the right to damages being separate and distinct from the right of rescission.

One thing is certain, defendant did not voluntarily surrender possession. Hence, on rescission, if he refused to give up possession unless and until the payments made by him were refunded, his defense could properly be set up in his answer.

When the buyer rejects goods because they are not what the contract requires, he is under no obligation to return them; he may simply refuse to regard them as his (3 Williston on Sales (rev. ed.), §610) and a buyer under a conditional sale has the same right: Stein v. Green et al., 64 F. Supp. 8 (D. C. Pa.). It is only when the property and possession have passed and the buyer wishes to revest the property in the seller that a return or offer to return the goods is necessary. Here, under the agreement, title was to remain in the seller, and under the lease it continued in the seller until final payment.

Of the offer to return, Professor Williston says, 3 Sales (rev. ed.) 497, §649:

"That the defrauded party may make his offer to return conditional on receiving back what he has given, thus in effect asserting a lien, is not always admitted, but justice as well as sufficient authority requires it. The right of rescission would otherwise frequently be worthless."

The question of the right to the lien is settled in most States by the Sales Act, although in Texas, where the Uniform Sales Act was never adopted, the court recognized the right to a lien in Alexander et al. v. Walker, 239 S. W. 309.

Under subdivision (d) of paragraph 1 of section 69 of the Act of 1915, P. L. 543, 69 PS §314):

"Where there is a breach of warranty by the seller, the buyer may, at his election,—

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods have already been received, return them or offer to return them to the seller, and recover the price or any part thereof which has been paid."

Under paragraph 4 of this section:

"Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price."

And under paragraph 5 of this section:

"Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuse to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section fifty-three."

The courts of last resort of several States have construed these sections. In Auto Brokerage Co. v. Ullrich, 102 N. J. L. 341, 131 Atl. 901, the buyer contracted to purchase a 1921 truck but received an earlier model. The court held that in replevin to recover possession of a truck for default in contract payments, the purchaser having rescinded the contract for seller's deception was entitled to hold the car until the seller restored advance payments.

In Land Finance Corp. v. Sherwin Electric Co., 102 Vt. 73, 146 Atl. 72, the court held that where there has been a timely rescission, if the seller declines the offer of the buyer to return, the buyer is not required to return machines but has the right to retain them as secu-

rity for the repayment of such part of the price thereof as has been paid under subdivision 4, sec. 69 of the Sales Act.

And in Wilson & Co. v. M. Werk Co., 104 Ohio 507, 136 N. E. 202, the court held that if the buyer rescinds his contract, his remedy is under subdivisions 4 and 5 of the Sales Act. Plaintiff (after rescission) held the product as bailee for the seller, subject to plaintiff's lien to secure the repayment of the money plaintiff had paid defendant, which lien could be enforced in the manner provided by section 8433, General Code, but the right of plaintiff to recover is specifically provided by subdivision 4, above quoted.

For other decisions reaching the same conclusion, see Bardes Range & Foundry Co. v. Weaver, 44 N. E. (2d) (Ohio App.) 130; Gottman v. Jeffrey-Nichols Co., 268 Mass. 10, 167 N. E. 229; Sammis v. Marks, 69 Utah, 26, 252 Pac. 270; Kahn v. J. C. Management Corp., 59 N. Y. S. (2d) 547, and Goldberg v. Minerva Automobiles, Inc., et al., 278 Ill. App. 217.

In the lower courts the conclusion is the same.

In Stein v. Green et al., 64 F. Supp. 8, involving a conditional sale, when plaintiff found that the shovel was not as represented, he notified defendants of the fact and the location of the shovel and refused to make further payments contemplated by the sales agreement. Defendants by replevin resumed possession of it. The burden of returning the shovel was not upon plaintiff under the circumstances. It was contended that plaintiff was compelled to return it promptly and then sue for breach of warranty. The court said:

"The sale was conditional and the title was in defendants."

In Grago v. Vitale et al., 63 D. & C. 87, the situation was identical with ours. Preliminary objections were filed in an action of replevin to defendants' answer, in which they admitted failure to pay, but alleged under

"New Matter" the breach of an implied warranty of fitness, notice to plaintiff of their election to rescind, and an unaccepted offer to plaintiff to return the goods upon being reimbursed for the money they had paid, for the amount of which they pleaded a lien. A motion for judgment on the pleadings was denied. The court said (p. 88) :

"The claim made by defendants, . . . is not for damages for breach of warranty, but merely for the return of the purchase money paid and for a lien on the goods in that amount. Their right to assert such a claim is recognized by the Sales Act of May 19, 1915, P. L. 543, Sec. 69, 69 P. S. Sec. 314, and by Pa. R. C. P. 1082(b) and (c)."

Section 69 of the act is set forth supra, and sections (b) and (c) of Pa. R. C. P. 1082 read as follows:

"(b) A defendant may set forth in the answer under the heading 'New Matter' any claim secured by a lien on the property.

"(c) If any party is found to have a lien upon the property the court may enter a conditional verdict in order to enforce the rights of all parties."

In Giombetti v. McConnell, 59 D. & C. 358, where the action was in assumpsit by buyer against seller to recover the purchase price paid for a stoker, a new trial was asked because the verdict of the jury was inconsistent in that it awarded to plaintiff the amount of the claim, provided that he return the stoker. Judge Hoban, referring to clause 4 of section 69, said (p. 360) :

"The words of the verdict, 'the stoker to be returned to Wm. A. McConnell', add nothing to nor do they impose any condition upon the payment of the money verdict other than the Sales Act already requires."

Counsel for defendant have pleaded two defenses. They are entitled to pursue only one in these proceedings. The law is well recognized that if, under the pleadings and the facts, a party is entitled to relief,

such relief will not be denied because counsel are in error in asserting the proper applicable law. Defendant is entitled to an opportunity to amend his pleadings.

Accordingly, we enter the following

*Order*

Now, June 3, 1949, objection 3 is overruled; objections 1, 2, 4 and 5 are sustained, and judgment will be entered for plaintiff, unless defendant, within 20 days from the date hereof, amends his answer to properly set forth the basis of his right to recover the payments made.