## James W. Batchelder v. Birchard Motors, Inc.

[144 A2d 298]
January Term, 1958

Opinion Filed March 5, 1958
Opinion on Motion for Reargument Filed July 31, 1958.

*R. Lawlor Cooper* for the plaintiff.

*Parker & Ainsworth* for the defendant.

■ **Barney, Supr. J.** This case is before us on exceptions to the granting of defendant's motion for a directed verdict by the trial court at the close of all of the evidence. On review of this question we are required to view the evidence in the light most favorable to the plaintiff. *Comstock* v. *Shannon*, 116 Vt 245, 73 A2d 111; *Appleyard Motor Transportation Co.* v. *Ray Co.*, 115 Vt. 519, 66 A2d 10. So viewed, the following material facts appear:

On September 1, 1956 the plaintiff, a mechanical engineer of thirty-two years experience, by letter inquired of the defendant concerning the purchase of a new Buick or Oldsmobile and concerning the trade-in allowance for the 1954 Oldsmobile offered in trade. Subsequently Mr. Doughty, sales manager for defendant, and the plaintiff conversed by telephone in connection with the proposed sale.

As a result an order was placed with the Buick Motor Division of General Motors by the defendant for a car to be assembled for the plaintiff as expressed in a letter to the plaintiff dated September 7, 1956, reading as follows:

> "Dear Mr. Batchelder:
>
> Your 1956 four door Special, dark grey, has been ordered. This car includes Black Tires and Tubes, Inside Tilt Mirror, Outside Rear View Mirror, Power Steering, Back-Up lights, Courtesy Light, Synchro Mesh Transmission, Green Nylon Seat Covers, Undercoat, Liquid Glaze, Heater and Defroster, Windshield Washer, Directional Signals, Oil Filter, and Oversized Tires.
>
> The net cost to you will be $1027.50. We would appreciate your check for $100 as a deposit on the car. Securing a deposit is the usual procedure in new car sales.
>
> Sincerely,<br>S/ William R. Doughty<br>William R. Doughty<br>Sales Manager"

The $100 deposit called for was duly sent by the plaintiff and received by the defendant.

On October 6, 1956, after notification by the defendant, plaintiff took delivery of the Buick automobile in question at Pittsfield, Massachusetts, signing the new car order therefor and a bill of sale to the defendant for his Oldsmobile. The plaintiff acknowledged that the car he received was equipped as stated in the letter of September 7, 1956 quoted above. Thereafter plaintiff expressed dissatisfaction with the performance and equipment of the Buick and on December 20, 1956 it was returned to defendant's place of business for servicing. At that time the Buick had 2186 miles on the odometer. The defendant made no charge for the servicing done at that time and provided plaintiff with a car for his use during the interval. Upon its return the car's performance continued to be unsatisfactory to the plaintiff.

On February 18, 1957, when an agent of defendant was in Vermont for the purpose of having plaintiff's car taken to Pittsfield, Massachusetts for examination by a factory representative of the Buick Motor Division, plaintiff had the agent served with process commencing this suit. That process sounds in tort, alleging that the plaintiff was induced to enter a contract for the purchase of this Buick automobile by the false and fraudulent misrepresentations of the defendant. The writ sets forth the representations allegedly made by the defendant as follows:

> " * * * then and there falsely and fraudulently represented to the plaintiff that the said automobile was a good one, was new in all its parts and equipment, would run efficiently and well, and would travel at least eighteen miles on a gallon of gasoline * * * "

A search of the transcript reveals that the only evidence in the case as to representations made to the plaintiff are to be found in the plaintiff's own testimony and are as follows:

> "Q. Do you now know what position Mr. Doughty occupies with Birchard Motor Company?
>
> A. Sales Manager.
>
> Q. And did you talk or communicate with Mr. Doughty about this gasoline mileage factor?

A. Definitely.

Q. And did he give you any representations as to what the car you bought produces?

A. He did.

Q. What was that representation?

A. He said it would give me as good mileage as the car I turned in, or better.

Q. Had you stated to him what your car that you turned in to him obtained?

A. Yes, I had.

Q. And you gave him a figure of miles per gallon?

A. I did.

Q. Of what?

A. 18 miles or better."

Further:

"Q. With whom did you have your negotiations at the Birchard's, of the aforesaid car?

A. With the aforesaid William Doughty.

Q. During the negotiations leading up to the sale and purchase of this car, did Mr. Doughty make some representations to you about the mechanical condition of this car?

A. Yes.

Q. That was in October, 1956?

A. That would be September.

Q. Prior to your purchase?

A. That was, Mr. Doughty's representations were prior to the date I gave them an order.

Q. What condition did he represent to you, mechanically speaking, that this car was in?

A. It would be new and perfect in every respect.

Q. Since your taking delivery of the car, has the car proved to be new and perfect in every respect?

A. It was new but it was not mechanically perfect."

Further:

> "Q. Did Mr. Doughty, on that date October 6, make any representation to you about gas mileage on this Buick Special?
>
> A. Yes.
>
> Q. What was the representation that Mr. Doughty made that day?
>
> A. He said with a standard transmission, which is the same as this syncromesh, that they usually got at least 18 miles to the gallon and, with some drivers, more, and I had no cause whatsoever on that point.
>
> Q. Was that gasoline consumption a factor which in any way influenced you in the purchase of that automobile?
>
> A. Yes, Sir."

No other evidence of representations made to the plaintiff was called to our attention in the briefs or in oral argument.

■ To support an action for fraud or deceit, the representations must be of existing facts relating to the subject matter of the contract, affecting its essence and substance, not matters of judgment or opinion, nor of facts that will exist, nor of promises. The representations must be made by the seller to induce the buyer to enter the contract; they must be false and at the time known by the seller to be false; or made by the seller as of his own knowledge without his in fact knowing them to be true; they must not be open to the knowledge of or known by the buyer and must be relied upon by him in entering the contract to his damage. *Hunt* v. *Lewis*, 87 Vt 528, 530, 90 A 578, Ann Cas 1916 C, 170; *Belka* v. *Allen*, 82 Vt 456, 462, 74 A 91; *Corey* v. *Boynton*, 82 Vt. 257, 72 A 987; *Shanks* v. *Whitney*, 66 Vt 405, 410, 29 A 367.

■ The question before us is whether or not in the circumstances disclosed by the evidence here these representations, or any of them, should have been for the jury. As a general rule the question as to whether a particular statement is one of fact or opinion is for the jury. However, this is not always so,

for cases frequently arise which are so plainly of the one class or the other that they can be disposed of by the court without the aid of the jury. *Belka* v. *Allen, supra.* In that case Justice Powers goes on to say at page 462:

> "The character and relation of the parties, their respective intelligence, the subject matter of the bargain, and all the circumstances must be considered. So each case must depend in large measure on its own facts. A statement which is in form only an expression of opinion, may in certain circumstances amount to an assertion of fact; and conversely, a statement which is in form an assertion of fact, may in certain circumstances amount to an expression of opinion merely. Statements of quantity, quality and value are usually held to be expressions of opinion and therefore not actionable."

Plaintiff here claims that his testimony that Mr. Doughty told him the Buick would give the plaintiff as good gasoline mileage as the car the plaintiff turned in coupled with his evidence that the plaintiff had told Doughty that the car turned in averaged eighteen miles to the gallon or better, amounted to enough of a representation of fact to at least make a jury question as to its being a statement of fact or opinion. Passing over the failure of this evidence to show when the representation was made other than it came after the letter of September 7, and passing over the failure of the evidence to disclose whether the plaintiff in this testimony is here referring to the same specific representation he quotes more precisely on page 83 of the transcript, we are assuming there was a separate representation made prior to delivery of the Buick, for the purpose of testing the question before us.

The circumstances of the case must be taken into account. This Buick was a new automobile assembled to order for the plaintiff and had no operational history. The defendant's sales manager was dealing with an experienced mechanical engineer. Under the circumstances here the sales manager could not know the operating characteristics of this particular car nor the driving methods of its prospective operator, all of which must have been apparent to the plaintiff. To that

must be added the undoubted knowledge of both that it was within the absolute control of the particular operator of the vehicle to operate it so as to cause the gasoline mileage to vary substantially from any predicted or estimated gasoline mileage. It can then only be said that such a statement was made as and could only have been intended to be a matter of the sales manager's opinion or judgment, and furthermore dealt with facts to exist in the future. This type of expression is in the same class of statements as those that relate to the productiveness of particular land, dependent upon estimate and judgment and predicated on data uncertain if not conjectural, which our courts have ruled to be mere expressions of opinion. *Belka* v. *Allen, supra,* 463, 464.

The other representations relied on—that the car would be mechanically perfect, and that with a standard transmission they usually got eighteen miles to the gallon and with some drivers more—are so clearly matters of opinion and judgment, and related to facts to exist in the future, all falling without the scope of the rule as expressed in *Hunt* v. *Lewis, supra,* as to require no further comment.

The plaintiff does not claim nor does the evidence sustain any claim that these representations, even if assumed to be false, were part of any fraudulent scheme to justify applying the rule of *Comstock* v. *Shannon, supra,* and *Harponola* v. *Wilson,* 96 Vt. 427, 120 A 895.

A verdict in favor of the plaintiff based on the representations as evidence would not stand, so, therefore, the lower court rightly granted the motion for a directed verdict. *Smith* v. *DeMetre,* 119 Vt 73, 78, 118 A2d 346. The plaintiff here, although perhaps a disappointed buyer, clearly was not a deceived one.

*Judgment affirmed.*

## On Motion for Reargument

**Barney, Supr. J.** The plaintiff filed a motion for reargument claiming that since there was no evidence introduced to show that it was known to both parties that it was within the absolute control of the particular operator of the vehicle

to operate so as to cause the gasoline mileage to vary substantially from any predicted or estimated gasoline mileage, the court's statement to that effect amounted to the taking of judicial notice. The question of judicial notice is not before us because the very testimony quoted in the opinion rebuts this premise of the motion, and plaintiff's position is not well taken.

As to the balance of plaintiff's stated reasons why reargument should be granted it is sufficient to say that this court reaffirmed what has been previously stated in *Belka* v. *Allen* and *Hunt* v. *Lewis,* both cited in the opinion and in *Niles* v. *Danforth,* 97 Vt 88, 93, 122 A 498, that the determination of the question here involved must be based on the facts of the particular case, including the circumstances of the parties.

Plaintiff calls to our attention *Potter* v. *Crawford,* 106 Vt 517, 175 A 229, in support of his motion. An examination of that case and the testimony recited in the opinion reveals the existence of some evidence of misrepresentations of existing facts about an animal then in existence known to that defendant to be false, relied on by that plaintiff and not open to her knowledge. These are the elements we stated were essential for the plaintiff to put forward in the present case and which the evidence discloses he did not do. The case of *Potter* v. *Crawford* does not support the plaintiff's position but is merely an affirmation of the rule set forth in *Hunt* v. *Lewis, supra,* as applied to its particular facts.

This court having held that there was no evidence as to representations of existing material facts for the jury's consideration, the case of *Dezero* v. *Turner,* 112 Vt 194, 22 A2d 173, is not in point.

The plaintiff in his motion has not called our attention to any material question that has not been fully considered in arriving at the result previously reached.

*Motion denied. Let full entry go down.*