## Durwood C. Collier and Leona B. Collier
### v.
## George C. Nolan, Florence Nolan and Patrick H. Brown

[211 A. 2d 265]

April Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed June 1, 1965

*Lee E. Emerson* for plaintiffs.

*Downs & Rachlin* for defendants Nolan.

*Richardson & Caldbeck* for defendant Brown.

**Smith, J.** This is an action for fraud in the sale of a farm, bought by the Colliers from the Nolans and located in Hardwick. In the summer of 1960 the Colliers learned from defendant, Patrick H. Brown, manager of the Farm Production Credit Association of St. Johnsbury, that the complete farm unit owned by the Nolans was for sale. Meetings took place between the Colliers and the Nolans and Brown, at which the condition and productivity of the farm and the livestock thereon were discussed between the parties. On July 2, 1960, a contract was entered into between the parties in which the Nolans agreed to sell, and the Colliers to buy the farm, equipment and stock for the total price of $28,000.00. The contract provided that on July 14, 1960 a deed would be given by the Nolans to the Colliers and they would receive in return a cash payment of $15,500.00, with the balance of the purchase price to be secured to the Nolans by a real estate mortgage from the Colliers. A down payment of $600.00 was made on July 2nd by the Colliers to the Nolans. Defendant Brown was present, and was a witness, at the signing of the contract, representing the Farm Production Credit Association, which association was financing the Colliers, in part, in making the purchase.

On July 14, 1960, the transaction was completed and the plaintiffs received their deed to the property and have since resided there.

Plaintiffs brought their action of fraud against the Nolans and Brown in the Caledonia County Court on October 28, 1963. Jury trial in said court resulted in a jury verdict for the plaintiffs against both defendants on April 10, 1964, in the amount of $4,500.00. Defendants Nolan and defendant Brown have taken their appeals here from verdict and judgment. For the reason that the Nolans and Brown have respectively briefed their appeals here on different grounds and are represented by different counsel, we will consider such appeals separately, first considering the appeal of the Nolans.

The claim of fraud advanced by the plaintiffs was based upon various alleged misrepresentations claimed by the Colliers to have been made by the Nolans regarding the farm and its stock to induce them to enter into the contract of July 2, 1960.

The first two issues presented to us in the brief of the defendants Nolan have to do with the claimed misrepresentation by the Nolans to the Colliers of the "milk production of the farm herd during the time that the Nolans were in possession of the farm. The evidence of the plaintiffs was that the Nolans stated to them that the cows on the farm had been producing 900 pounds of milk per day during the last several months of the Nolans' ownership and that such representation was relied upon by the Colliers to their damage.

The fact that such representation was made, and that it was a misrepresentation is not denied by the Nolans here. Their contention here is that the falsity of such representation became known to the Colliers prior to the time that the transaction between the parties was completed by the passing of the deed on July 14, 1960. Therefore, defendants say, the Colliers did not rely upon such representation in their purchase of the property, and such issue should not have been submitted to the jury by the court below.

The evidence is undisputed that Durwood Collier came on to the farm the day after the contract was signed on July 2, 1960, and managed and milked the cattle there during the period that intervened before the contract was consummated on July 14, 1960 by the passing of the deed. Also undisputed is that during this intervening period Collier discovered for himself that the cows were producing only 600 pounds of milk a day rather than the production of 900 pounds as represented by the Nolans.

The question presented is can an action of fraud be maintained by a buyer who is induced to enter into an executory contract by fraud of the seller, but who discovers such fraud before the consummation of the contract, and then proceeds with such consummation.

> "To support an action for fraud or deceit, the representations must be of existing facts relating to the subject matter of the contract, affecting its essence and substance, not matters of judgment or opinion, nor of facts that will exist, nor of promises. The representations must be made by the seller to induce the buyer to enter the contract; they must be false, or made by the seller of his own knowledge without his in fact knowing them to be true; they must not be open to the knowledge of or known by the buyer and must be relied upon by him in entering the contract to his damage." *Batchelder* v. *Birchard Motors, Inc.,* 120 Vt. 429, 433, 144 A. 2d 298; *Hunt* v. *Lewis,* 87 Vt. 528, 90 Atl. 578.

The argument of the defendants Nolan is that the Colliers, having knowledge of the falsity of the representation relative to the milk production at the time that the deed was passed, did not rely upon such representation in their performance of the contract and cannot pursue this action for fraud and deceit on this issue.

However, our rule, as appears in *Batchelder* v. *Birchard Motors*, supra, is that an action of fraud and deceit is supported if the fraud of the seller is relied upon by the purchaser "in entering the contract," not in its consummation. In the instant case the contract was entered into by the parties on July 2, 1960, when the agreement to buy and sell was signed by the parties and the plaintiffs made a down payment of $600.00. At the time plaintiffs entered into this contract they did so with full reliance on the misrepresentation of the defendants on the farm's milk production.

A situation similar to the one now presented was considered by this Court in *Mallory* v. *Leach*, 35 Vt. 156, at p. 172:

> "There is no principle of authority showing that where a person had been defrauded by another in making an executory contract, subsequent performance of it on his part, even with knowledge of the fraud, acquired subsequently to the making and previous to the performance, bars him of his remedy for any damage for the fraud. The party defrauded, by performing his part of the contract with knowledge of the fraud, is deemed to have ratified it and is concluded thereby from subsequently disaffirming it. That is the extent of the rule. His right of action for the fraud remains unaffected by such performance."

No doubt exists that the plaintiffs could, upon the discovery of the fraud, have rescinded the contract and demanded their payment back. But they were not bound to do so. The plaintiffs had the right to retain the property purchased and maintained an action for damages suffered by reason of the fraud and deceit. *McAllister* v. *Benjamin*, 96 Vt. 475, 485, 121 Atl. 263. This was one of the four rights that plaintiffs could have exercised upon discovering the fraud. They could have rescinded the contract and recovered back what they had paid; (2) they could have resisted an action for the purchase price; (3) they could have stood on the contract and recovered such damages as they suffered by fraud; or (4) they could have recouped such damages in an action brought against the defendants on the contract. *Land Finance Co.* v. *Sherwin Electric Co.* 102 Vt. 73, 81-82, 146 Atl. 72. No error is found in the lower court's submission of this issue to the jury.

It necessarily follows that defendants Nolan second-briefed exception to the failure of the court to charge that the plaintiffs could not recover for fraud based upon the misrepresentation on milk production, if plaintiffs knew the true fact before taking title, avails them nothing. As we have just demonstrated it was misrepresentation that induced the plaintiffs to enter into the contract that gave them the right to maintain the action for fraud, and not the taking of title which was the contract's consummation.

The next exception by defendants Nolan is to the action taken by the trial court relative to four allegations of fraud, alleged by the plaintiffs, but which were removed by the action of the court from the consideration of the jury. The lower court, in its instruction, charged the jury in specific detail on the five issues of fraud for their consideration, but did not inform the jury of the four issues of fraud which had been withdrawn, which was error, say the defendants.

The exception, upon which defendants rely, was taken at the conclusion of the charge given to the jury:

"We further except to the failure of the Court to specifically charge the jury that they shall disregard all evidence introduced in connection with the four issues withdrawn from the case, in view of the fact that evidence was introduced by both sides and that it is no longer applicable."

Such exception did not inform the lower court of the claimed error brought here. This exception is to a claimed failure to withdraw evidence from the consideration of the jury and does not bring to the court's attention claimed error in not specifying to the jury the four issues withdrawn. No question shall be brought to the Supreme Court except that upon which it is made to appear that the trial court has had fair opportunity to pass judgment. *Langevin* v. *Gilman*, 121 Vt. 440, 443, 159 A. 2d 340. This question raised by defendants is not for our consideration.

Upon the same exception defendants also contend that the lower court should have struck or otherwise removed from the consideration of the jury, all evidence bearing upon the withdrawn issues.

Nothing in the brief of the defendants refers to any specific evidence claimed to be prejudical to them. There is no claim made that such evidence was received over the objections of the defendants. The record does not disclose a motion to strike any or all of the evidence that was received in the case on the withdrawn issues. No reference in the brief

points out to us at what pages in the record we may find the evidence which defendants say should have been removed from the case.

If the defendants considered the evidence received on the withdrawn issues of sufficient importance to be prejudicial they should have moved to have such evidence struck and removed from the consideration of the jury. A trial judge should not be required to carry in his mind all the details of the evidence, nor can this Court be reasonably expected to search the transcript to determine what evidence, if any, should have been rejected. *Scott, Admr.* v. *Bradford National Bank,* 107 Vt. 226, 231-232, 179 Atl. 149.

■ If the lower court was in error in instructing the jury to consider "all the evidence in the case" then the defendants not only had the burden of establishing such error, but also that such error was prejudicial and injuriously affected their rights. *Jacquether* v. *Guilford School District,* 123 Vt. 382-383, 189 A. 2d 558; *Towle* v. *St. Albans Publishing Co.* 122 Vt. 134, 165 A. 2d 363. This the defendants have not done. No error is found in the denial of defendants Nolon's motion for a reversal of the judgment and the granting of a new trial by the trial court upon the grounds here presented.

We turn now to the claims of error made by defendant, Patrick H. Brown, in the denial by the lower court of his motion to direct a verdict in his favor, as well as his motion, after verdict, for judgment in his favor, notwithstanding the verdict.

As this opinion has previously stated, Brown was manager of the Farm Production Credit Association of St. Johnsbury, at the time of the transaction between the Colliers and the Nolans, which Association financed, in part at least the Colliers' purchase of the property. But of greater significance, in view of the questions presented, the evidence is undisputed that after the completion of the contract between the parties, Brown received a fee or gratuity of $280.00 from the Nolans for his personal services in the matter. Such payment was not made to him in behalf of the Farm Production Credit Association, and was not connected in any way with any duties that he had as manager of such Association.

The evidence, taken in the light most favorable to the plaintiffs, is that Brown recommended the purchase of the Nolan farm to the Colliers. He was present at the conference between the parties that led up to the making of the contract of sale, and, in fact, was the only witness to it.

After Mr. Nolan stated that his dairy herd was free from disease, that the herd was producing 900 pounds of milk per day, and that the Colliers would not have to buy hay to carry the herd, Mr. Brown said "he would vouch for all Mr. Nolan said", according to plaintiffs' evidence. When Mr. Collier was queried on what Brown had said relative to the soundness of the cattle, he testified, "He said they were in fine shape and he knew there was no disease in them and it was on the strength of this that we decided to buy; on what Mr. Brown and Mr. Nolan said." Whether or not the representations as to the soundness of the cattle by the defendants was fraudulently made was an issue in the case for the determination of the jury.

■ Brown was in the position of one accepting the benefit of another's fraudulent acts, knowing the methods used, and adopting them as his own. As was pointed out by Justice Barney in *Commerical Credit Plan, Inc.* v. *Beebe,* 123 Vt. 317, 322, 187 A. 2d 502, this is so even though he may have been innocent of the fraud when committed. One who ratifies and makes his own the fraudulent acts of another becomes liable therefor, although there was no combination or conspiracy between them. *Fitzsimmons* v. *Joslin,* 21 Vt. 129, 142.

Defendant Brown further claims that, at most, Brown only expressed an opinion as to the value of the farm which would not support an action of fraud. As we said in *Tetrault* v. *Campbell,* 115 Vt. 369, 374, 61 A. 2d 591:

"Statements appear in many of our cases to the effect that representations as to value are ordinarily regarded as matters of opinion and so not fraudulent in a legal sense. But if they are made as assertions of facts, and with the purpose that they shall be so received, and are so received, they may amount to fraud. That whether such statements are to be taken as mere opinions or as statements of fact depend upon the circumstances of the particular case; so whether fraud was intended is usually, although not always, a question for the jury.

While defendant Brown's interest in the sale of the farm to the Colliers was not exactly the same as was that of the defendants Nolan; they shared a privity of interest in such sale in that each stood to benefit from it. There was privity of interest between them sufficient to make the acts and representations of the Nolans relevant evidence against Brown, particularly in view of the evidence that he "vouched" for them as his own. The motion of the defendant Brown for a ver-

dict in his favor was properly denied by the court below. Because defendant Brown states that the ground of his motion to set aside the verdict and grant judgment for him notwithstanding the verdict are based upon the same grounds just determined, we need give it no consideration.

The entry is *"Judgment Affirmed."*